## SPRINGDALE BOROUGH COUNCIL

## REGULAR COUNCIL MEETING

## MINUTES OF NOVEMBER 17, 2015

The Springdale Borough Council met in Regular Session on Tuesday, November 17, 2015 at 6:00 p.m. at the Springdale Borough Municipal Building, 325 School Street, Springdale, PA 15144.

Mr. Ziencik asked if everybody can continue standing for a Moment Of Silence for the Tragedy in Paris.

Members present: Mr. Ziencik, Vice President; Mr. Forbes; Mr. Molnar; Mr. Polsinelli; Mr. Overly; and Mr. Zurisko. Also Present: Mayor Kenneth Lloyd; Mr. Craig Alexander, Solicitor; Mr. Gordon Taylor, Senate Engineering; and Ms. Kimberly A. McAfoose, Borough Manager. Excused: Mr. Fry.

| Topic | Comments / Discussions | Action |
|---|---|---|
| **Public Hearing – Multi Municipal Comprehensive Plan** | Ms. Carolyn Yeagle was recognized by the Vice-President to conduct a Public Hearing concerning the Multi-Municipal Comprehensive Plan which includes the municipalities of Springdale Borough, Cheswick Borough, Harmar Township and Springdale Township. This Public Hearing is for the Springdale Borough portion only. Ms. Yeagle explained that this Public Hearing is to offer the public the opportunity to review the Plan and conclude with a question/answer session. The Comprehensive Plan is a guide, not the law. The laws that come out of things from the Comprehensive Plan would be adopted by ordinance. The Pennsylvania Municipalities Planning Code identifies that it should be updated every 10 years. It contains a series of goals and key recommendations based upon the actions that the four municipalities take over the course of the next decade & have the opportunity to continue to work together and to strengthen the core pieces of each municipality in order to collaborate together where there is opportunity for economic development. The idea is to come together so that a municipality is not overlapping on "like" actions, but using their resources and time with each other. Mr. Spirk asked where to get information on this subject. He was told the Borough office has copies of this documentation. Mr. Moreno asked where the funding comes from. He was told the money comes from the four municipalities in applying for grants and such. This is not a government organization; it is a compliment to the municipality. | |
| **Public Meeting – Bond Issue** | Mr. Anthony Ditka was recognized by the Vice-President to conduct a Public Meeting regarding the refunding of the | |

EXHIBIT
17

1/6/2016

| | | |
|---|---|---|
| | 2010 Bonds through the issuance of the 2015 Bonds and sign the required documents. This means taking the interest rates from the old Bonds and turning them in and getting new & improved interest rates now, in order to save the Borough money and apply that savings to capital projects, such as improvements to the water treatment & distribution system. | |
| Correspondence | Ms. McAfoose read a Thank you from the Springdale Volunteer Fire Department for the very generous donation given to them in lieu of them having a bad jubilee season due to the weather. | |
| Approval of the Minutes Resolution 01.11.2015 | **MOTION 01.11.2015:** Mr. Overly made a motion to approve the Minutes of the October 20, 2015 Regular Council Meeting and the October 29, 2015 Special Council Meeting. The motion was seconded by Mr. Zurisko and carried unanimously. | M |
| **APPOINTED OFFICIALS REPORTS** | | |
| Solicitor's Report | A written Current Legal Issues Report as of November 12, 2015 was submitted by Solicitor Alexander and placed in Councils' packet. Solicitor Alexander did not have additional items to add to his report. | |
| Taxpayers comment on Agenda Items | There were no comments from the audience. | |
| Engineer's Report | The November 17, 2015 Engineer's written Report was provided in Councils packet.<br>Mr. Taylor reported on the following:<br>• CDBG 42 – Applications for the Keene Street & James Street waterline replacements projects were submitted to the AVNCOG on 11/9/15.<br>• Trail, Kayak Launch and Restroom Project – The Borough needs to contact First Energy in order to set up a "work order number" for a service drop from Pole#443116 which will allow Senate Engineering to obtain voltages that are available at the site. Title/purchase information/documentation has been forwarded to the Solicitor for review/signatures. Conference call with DCNR needs to be scheduled to address design submission, questions/comments.<br><br>Mr. Molnar asked Mr. Taylor if he reviewed the Household Surveys and asked if Springdale Borough would qualify and Mr. Taylor answered that the final number was adequate for Springdale Borough to qualify for the Grants. | |
| Misc. Reports | AVJSA - No Report.<br><br>Emergency Management - Mr. Moretti reported:<br>• All computers are in and up and running.<br>• Elected officials have to be NIMS certified. Please | |

| | | |
|---|---|---|
| | contact Mr. Moretti to schedule.  Mr. Ziencik asked Mr. Moretti to explain NIMS.<br>• The donated Satellite Weather System is to be installed on the roof this week.<br>• Two new volunteer Emergency Management Deputies were trained & certified:  Kim McAfoose and Dan Copeland.<br><br>S.T.A.R.  - No Report. | |
| **COMMITTEE REPORTS** | | |
| **Mayor's Report** | Mayor Lloyd reported:<br>• Lines will be painted on Colfax Street for speed check.<br>• There will be police presence at Colfax and the High School.  Drivers have to slow down in the school zones, all violators will be ticketed, including school bus drivers. | |
| COG | Mr. Lloyd reported that the new program for demolition from the County has been cut immensely. | |
| Police Department | A written Police Department Overview Report as of October, 2015, was submitted by Acting Chief of Police, Derek Dayoub, and placed in Councils' packet. | |
| **AUXILIARY BOARDS & COMMISSIONS** | | |
| Finance Committee | **Resolution 02.11.2015**<br>Motion to approve the Treasurer's Report as of November 2015<br>**MOTION 02.11.2015:**  Mr. Zurisko made a motion to approve the Treasurer's Report as of November 2015.  The motion was seconded by Mr. Forbes and carried unanimously.<br><br>**Resolution 03.11.2015**<br>Motion to approve the November Bill Payment List.<br>**MOTION 03.11.2015:**  Mr. Zurisko made a motion to approve the November 2015 Bill Payment List excluding the invoice #110315N0 from BurMac Roofing.  The motion was seconded by Mr. Overly and carried unanimously.<br><br>**Resolution 04.11.2015**<br>Motion to approve the November Additions to the Bill Payment List.<br>**MOTION 04.11.2015:**  Mr. Zurisko made a motion to approve the November Additions to the Bill Payment List. The motion was seconded by Mr. Molnar and carried unanimously. | M<br><br><br>M<br><br><br>M |

1/6/2016

| | |  |
|---|---|---|
| | **Resolution 05.11.2015**<br>Motion to approve the BurMac Roofing Invoice.<br>**MOTION 05.11.2015:** Mr. Polsinelli made a motion to approve the BurMac Roofing invoice. The motion was seconded by Mr. Forbes and carried with Mr. Zurisko abstaining due to him being the Secretary / Treasurer of BurMac Roofing. | M |
| | **Resolution 06.11.2015**<br>Motion to approve the 2016 Budget General Fund, Water Fund, Sewer Fund, Capital Improvements Fund, Liquid Fuels Fund and Fire Fund.<br>**MOTION 06.11.2015:** Mr. Zurisko made a motion to approve the 2016 Budget - General Fund, Water Fund, Sewer Fund, Capital Improvements Fund, Liquid Fuels Fund and Fire Fund. The motion was seconded by Mr. Molnar. Mr. Molnar thanked the Borough Manager on her hard work on the 2016 Budget that reflects no tax increase. Ms. McAfoose responded that Council worked very hard on the 2016 Budget, also. The motion carried unanimously. | M |
| | **Resolution 07.11.2015**<br>Motion to enact Ordinance #1242, the 2016 Tax Ordinance.<br>**MOTION 07.11.2015:** Mr. Zurisko made a motion to enact Ordinance #1242, the 2016 Tax Ordinance with a total millage rate of 6.75 mills. 6.3 general purposes, .2 fire and .25 Springdale Free Public Library. The motion was seconded by Mr. Molnar and carried unanimously. | M |
| | **Resolution 08.11.2015**<br>Motion for the refinancing of Bond Ordinance #1243.<br>**MOTION 08.11.2015:** Mr. Zurisko made a motion for the refinancing of Bond Ordinance #1243. The motion was seconded by Mr. Overly and carried unanimously.<br><br>At 6:55 p.m., Mr. Ziencik announced a 5 – 10 minute recess to sign the required Bond documents.<br>At 7:06 p.m., Mr. Ziencik reconvened the Regular Meeting. | M |
| Personnel Committee | Executive Session – Mr. Forbes requested an Executive Session after Citizen Comments.<br><br>**Resolution 09.11.2015**<br>Accept the resignation of John Boyer – Crossing Guard<br>**MOTION 09.11.2015:** Mr. Forbes made a motion to accept the resignation of John Boyer as Crossing Guard at the end of 2015 and send a Thank You letter. The motion was seconded by Mr. Polsinelli and carried unanimously.<br><br>Council agreed to advertise for a Crossing Guard. | M |

4

1/6/2016

| | | |
|---|---|---|
| | <u>Employee Manual</u><br>Ms. McAfoose explained that this Employee Manual is mainly for the Borough Office since the Borough Office is not governed by a Contract to set some guidelines & rules for timing, the way to do things, performance & management, etc. because, currently, there is no document to go by.<br>**MOTION 10.11.2015:** Mr. Forbes made a motion to adopt the Employee Manual/Handbook. The motion was seconded by Mr. Molnar. Mayor Lloyd asked if this Employee Handbook was compared to the current labor agreement. Solicitor Alexander explained to the extent that the Employee Handbook is in conflict with the Collective Bargaining Agreement, the Collective Bargaining Agreement prevails. The Collective Bargaining Agreement has been bargained & negotiated, it's the working document. The Employee Handbook cannot change any working conditions in the Police Department without bargaining. Ms. McAfoose indicated that the Employee Handbook is basically for the Borough Office Personnel who are not governed by either of the Collective Bargaining Agreements. | M |
| Code Enforcement | The October 2015 Report of the Zoning Officer/Code Enforcement Officer was included in Council's packet. | |
| Public Safety Committee | Mr. Ziencik announced that on Monday, December 14, 2015 at 6:00 p.m., the Springdale Volunteer Fire Department will have Santa Claus go around Springdale Borough on the Fire Truck. The stops and the times will be posted on the SVFD website.<br>**MOTION: 11.11.2015:** Mr. Polsinelli made a motion to donate $500.00 to the Springdale Volunteer Fire Department towards the treats for the children, as it has been done the last several years. The motion was seconded by Mr. Forbes and carried unanimously.<br><br>**Resolution 12.11.2015**<br><u>Motion to accept the 2016 Hoffman's Boarding Kennels Professional Service Contract.</u><br>Ms. McAfoose indicated that it is $5.00/per month more for 2016 than in 2015.<br>**MOTION 12.11.2015:** Mr. Molnar made a motion to approve the 2016 Hoffman's Boarding Kennels Professional Service Contract and authorize the proper Borough official to sign the contract. The motion was seconded by Mr. Forbes. Mr. Polsinelli asked the Police if they are satisfied with Hoffman Kennels service. He was told yes. The motion carried unanimously. | M<br><br><br><br><br><br>M |
| Street Committee | Mr. Overly reported:<br>• Christmas decorations were completed today on Pittsburgh Street and in the Parklet. | |

5

| | | |
|---|---|---|
| | • Asphalt milling on Colfax Street is completed for this year.<br>• Will be repairing a catch basin in front of PPG gates on a weekend and PPG is going to be paying for the repair.<br>• Thanked Mr. Ziencik for calling Mr. Canonico about the Oakwood Pump Station.<br><br>Mr. Ziencik announced he had a couple residential complaints:<br>Going up Colfax Street, on the right-hand side before the Stop sign, before Elwyn Avenue, there are leaves approximately 2 feet thick that stick out on the road and cars are starting to park out into the middle of the street, choking that little part of the street off and causing a hazardous situation.<br>Mr. Overly will have the street crew clean that up with the street sweeper.<br><br>Mr. Moreno spoke from the audience regarding leaves on the sidewalk in front of 345 Colfax Street creating another hazardous situation. Mr. Ziencik responded that we will try to do something on this end.<br><br>Salt Trucks<br>The Police indicated that they are going to enforce "no parking" of commercial vehicles on the streets. It creates a dangerous situation for emergency vehicles and snow plows due to some of the streets being really narrow. Mr. Ziencik responded that there has to be a solution to this problem. | |
| Water Committee | Mr. Overly reported that there is a fire hydrant leaking on James Street that has been turned off until it is repaired this week or next week. The fire department was notified of this fire hydrant being out of order. | |
| Facilities Committee | Veterans Memorial Field<br>Mr. Zurisko indicated that in Ordinance #1183, it states that Council can set the hours of operation at Borough facilities by making a motion; therefore, at Veterans Memorial Field Playground he will make a motion to do so.<br>MOTION 13.11.2015: Mr. Zurisko made a motion that the hours of operation at Veterans Memorial Park Playground be closed from November 1st. until April 1st. and the other months the Playground will be open at 9:00 am and closed at dusk and have signs posted at the Playground to this effect. The motion was seconded by Mr. Overly. Mr. Molnar commented that it has been past practice that the Playground is opened on nice; warm days between the above stated closed dates. Mr. Zurisko added that stipulation to his motion. Mr. Ziencik asked for citizen | M |

| | | |
|---|---|---|
| | comments from the floor, since this item is not on the Agenda. There were no comments. The motion carried unanimously.<br><br>**Resolution 14.11.2015**<br>Motion to TABLE bids for roof replacement<br>**MOTON 14.11.2015:** Mr. Molnar made a motion to reject all bids for roof replacement due to not having prevailing wage for any bid over $25,000 and have the specifications; we now have, enhanced and make this available at a later date by the Borough engineers. The motion was seconded by Mr. Polsinelli. Mr. Polsinelli clarified that the specifications will be written by the Borough engineers. Mr. Molnar clarified that when the Borough advertises bids, for any project, the last sentence always is, the Borough reserves the right to reject any and/or all bids. The motion carried with Mr. Zurisko abstaining, because he is the Secretary / Treasurer of BurMac Roofing. | M |
| Recreation Committee | <u>Winter Recreation Program</u><br>Fun and Freedom provided a Flyer for the 2015/2016 Winter Recreation Program. | |
| Agan Park Committee | No Report. | |
| **Unfinished Business** | <u>Library Lease and request for additional electricity.</u><br>Ms. McAfoose commented that Mr. Fry may still be working on that and Mr. Ziencik indicated that it will appear as Unfinished Business on next month's Agenda.<br><br>**Resolution 15.11.2015**<br>Motion to approve the following: Cell Phone Policy, Daily Accounting Tasks – Borough Office, and Disaster Recovery Plan – Borough Office.<br>**MOTION 15.11.2015:** Mr. Molnar made a motion to adopt the following: Cell Phone Policy, Daily Account Tasks – Borough Office, and Disaster Recovery Plant – Borough Office, recommended to be passed by the Borough accountant. The motion was seconded by Mr. Polsinelli. Mr. Polsinelli indicated that there is no provision in the Cell Phone Policy that states that employees cannot drive and talk on their cell phones, and if they do, what are the penalties. Ms. McAfoose clarified; these are accounting matters for the Borough audit. This is more of a safety policy which would be totally separate and she would be happy to work on but the above three policies finish what the audit needs to have done for the state and who they report to. Mr. Ziencik asked the Solicitor if a penalty clause can be added to the Cell Phone Policy and if it would be legal and binding. The Solicitor responded, absolutely. Solicitor Alexander asked if the bargaining unit members who have borough-issued cell phones that there is going to be some | M |

1/6/2016

| | | | |
|---|---|---|---|
| | sort of reimbursement taken from those people. Ms. McAfoose responded, yes. Solicitor Alexander indicated that that could be deemed as a change in their working conditions and that would need to be bargained. Ms. McAfoose responded that it was already bargained, it is in their contract. Solicitor Alexander clarified that the money is already taken for cell phones. Ms. McAfoose responded that there is no change, just putting into writing to satisfy the Borough accountant. The motion carried unanimously. | | |
| **New Business** | Request from Springdale High School Cheerleading use of General Meeting Room on 12/6/2015. <br> **MOTION 16.11.2015:** Mr. Overly made a motion to approve the request from the Springdale High School Cheerleading use of the General Meeting Room on 12/6/2015 for a Christmas Party. The motion was seconded by Mr. Forbes and carried unanimously. | M | |
| | Request from Springdale Softball Assoc. for use of the Borough Gym every Saturday from 2:30pm-4:30pm and every Sunday from 1:00pm-3:00pm. <br> Ms. McAfoose specified that the Gym Guidelines must be strictly followed in order to keep the damage down. Mr. Ziencik indicated that the Gym Guidelines should be forwarded to the people using the Gym. <br> **MOTION 17.11.2015:** Mr. Zurisko made a motion to approve the request from the Springdale Softball Assoc. for use of the Borough Gym every Saturday from 2:30 pm - 4:30 pm and every Sunday from 1:00 pm - 3:00 pm. The motion was seconded by Mr. Molnar and carried unanimously. | M | |
| | Request from Freeport Winter League (girls basketball) Tuesday, Wednesday and Thursday 3:00 pm to 5:30 pm. <br> **MOTION 18.11.2015:** Mr. Zurisko made a motion to approve the request from Freeport Winter League (girls basketball) Tuesday, Wednesday and Thursday 3:00 p.m. to 5:30 p.m. The motion was seconded by Mr. Overly. Mr. Zurisko asked if this group meets the guidelines and he was told that is what the requester said. Mr. Ziencik asked about insurance and was told insurance & all 3 clearances have to be on file in the Borough office before a key to the Gym is given out. The motion and carried unanimously. | M | |
| | Coffee with Senator Vulakovich <br> **Coffee with Senator Vulakovich** <br> **Tuesday, December 15, 2015** <br> **from 8:30 am - 10:00 am** <br> **in the General Meeting Room.** | | |

1/6/2016

<u>Chief</u>

Mr. Molnar commented that Council is aware of the October meeting concerning the Chief and his claim that he wanted to return to work ASAP. Council directed the Solicitor to issue a subpoena so the Chief could document the time that shows he was off as per the audit. That was a month ago, or four weeks. Another condition for the Chief's return to work was that he had to pass a physical, psychological and drug test. These tests are not uncommon, they are done for part-time and take very little time. First, it is Mr. Molnar's understanding, the subpoena was served and he refused it. Second, when the appointments were made for testing, he did not go. He was on vacation, hunting. This physical, drug & psychological tests would have to show that he was able to return to work and that has not happened. It has been four weeks. The Borough made the appointments and the Chief said he was going on vacation, that he was going to visit relatives, that he was going to visit family and finally he was going hunting. Mr. Molnar commented that hunting and all that other was more important then doing the tests that he was required to do by Council. It is hardly indicative of someone who really wants to return to work. He won't accept a subpoena or take the tests. Mr. Molnar asked the Solicitor if he said anything out of line to please correct him. Solicitor Alexander responded that the only thing he would correct, with regards to the appointments that the Solicitor scheduled, it did say he was not available the first time they talked he said the Chief would come back and come to the appointments if we had not already did not cancell them which we did because he demanded they be cancelled on Friday. Mr. Molnar responded that, here we are four weeks after the fact, Council's directives have been ignored, Mr. Molnar asked the Solicitor if he speaks out of turn to correct him, sometime in late July he asked Council to find out if the Chief filed a workers compensation claim. Council has no idea to this day what that was for. The hearing was held and his claim was denied. The Chief appealed that claim of denial and there will be another hearing in early or mid December. Also, sometime in early October, among all the other lawsuits the Borough has, there is another lawsuit from the Chief claiming discrimination that has not been made public that Mr. Molnar is making public now. Mr. Molnar reiterated that the Chief had four weeks to take these simple tests and Council was more than fair to just give him the opportunity to take the tests in one day. And now it is four weeks later, and there is no accountability for the time. Mr. Molnar thinks it is time to move on and bring closure to this and Mr. Molnar makes a motion to terminate the Chief for cause. Solicitor Alexander asked, before Mr. Molnar makes the motion, Mr. Molnar asked Solicitor

9

1/6/2016

Alexander to comment on anything Mr. Molnar said. Solicitor Alexander said he does not think this Council could consider at all any actions that the Chief has taken with regard to anything he has filed. Nothing that Council does can be predicated on that.

**MOTION 19.11.2015:** Mr. Molnar made a motion to terminate the Chief for cause, immediately. The motion was seconded by Mr. Forbes. Mr. Ziencik asked for any questions on the motion and since this is not on the Agenda, is there any public comments from taxpayers/borough residents on this motion, as follows:

Mr. Moreno, Colfax Street – Asked what is the cause of termination. Mr. Molnar responded that the cause is the time that the forensic accountant found he did not account for as he was directed to do and he did not take the physical, psychological & drug tests that Council required him to do 30 days ago. Mr. Moreno asked if the Solicitor said that firing the Chief cannot be based on him refusing to take the test. Solicitor Alexander clarified that he said that you can't fire him for any threat of any potential litigation. You cannot use the fact he has threaten litigation as a basis for firing.

Ms. Hartz, School Street – Asked if it was correct that it was said that the Chief was willing to fly back for the tests but they were already cancelled. Solicitor Alexander responded that the Chief's lawyers on Friday. Solicitor backed up: Jason Fry notified the Chief directly that his psychological was scheduled for November 12, 2015. The Solicitor received a letter from the Chief's lawyer a day or so after that saying that the Chief was unavailable to take his psychological on the 12th and even if he was available, he wasn't showing up because the Chief was going to go to his own doctor's first. The Solicitor did not respond to that letter because he was still trying to schedule to full physical. He was waiting for some recommendations from Bill Gamble of who to use. The Solicitor finally got the Chief full physical scheduled and he sent the Chief's lawyer a letter saying his psychological is scheduled for the 12th and his full physical is scheduled for the 13th and the Solicitor understands he is not available on the 12th but if he is available, he is not coming. The Solicitor told him, that pursuant to his discussion with Jason Fry, he is to provide the Borough documentation of his unavailability. This was late Friday he had written him back that he had planned to go away on a trip to visit family that he had scheduled for some time and had gone on for 20 years and that the Mayor knew about it and approved and the Solicitor said that Council has not approved and nobody had even talked to Council about it. But, regardless, he was on Unpaid Leave/Paid Leave and so he demanded that the Solicitor cancel the examinations.

10

Monday morning he sent another letter, demanding the Solicitor cancel the meetings and he needed to hear by 10:00. Solicitor Alexander cancelled the examinations, as he said. About, 10:20, he sent another letter since he has not heard from him, the Chief will be forced to fly back for these physicals even though it seems unnecessary because he has to go to his own doctor first. The Solicitor paraphrased of his letter from the Chief's lawyer. Solicitor Alexander wrote the Chief's lawyer back and it took 4 or 5 different communications back and forth and Solicitor Alexander asked if his lawyer wants him to rescind these cancellations because the Chief's lawyer told him cancel them, he will do that, if the Chief is flying back. And, finally, after about the fifth communication back and forth, the Chief's lawyer said don't rescind the cancellations so Solicitor Alexander didn't. Mr. Molnar reiterated a little more on that topic. The Chief stated he was going on vacation, it was unauthorized, again, more time not account for, he just packed up and left. The point being, it is four weeks today, that he had an opportunity since he wants to come back to work to take these tests and come back and he failed to do so. Mayor Lloyd asked why the Chief would need vacation if he was on paid administrative leave and is there any proof that he denied the subpoena. Solicitor Alexander responded with regard to the subpoena, is the Chief's lawyer said that the lawyer rejected the subpoena. Mayor Lloyd repeated, the lawyer rejected the subpoena, that is a big difference. Mayor Lloyd said, the Chief is under doctor's care as we speak. There were words going around here that the Mayor let him go on vacation. Mayor Lloyd said he never mentioned vacation. The Chief has been under medical supervision and even come back to work in August and he was sent home with the test already completed. The test that Council wants him to have, he already completed. Going on and on, every day, is clearly, clearly the nitch that a couple people on Council have to get rid of this guy and he sees for no reason to remove the Chief, he is under doctor's care right now and he thinks we are on a slippery slope when we start firing somebody when they are on doctor's care. Mayor Lloyd said there are a lot of things going on here on assumptions and rumors that are not true, he has been in contact with him. Mayor Lloyd said it is not feasible right now to do that. The Chief has answered everything asked of him. The Mayor never said he could go on vacation. The Mayor said there are just too many questions without any proof. Mayor Lloyd said when there was call for investigation, the District Attorney would not take it, the AG would not take it, State Police would not take it, and we got a CPA to write his opinion on time. Mayor Lloyd was told from day one from Jason that Jim & Jim went

over the vacation and he did not have any vacation. Mayor Lloyd never said he could go on vacation, Mayor Lloyd said he told him he is on paid administrative leave, what are the requirements on paid administrative leave. Mayor Lloyd asked what are you trying to say here, that he is suppose to sit home and wait, he is on paid administrative leave. The rules that the doctor's has given him, he is allowed to do what he is doing under doctor's care. Mayor Lloyd said the Chief told him he wants to come back to work. Mayor Lloyd does not know why this was brought up when it was voted down last meeting. Mayor Lloyd said he will stick by him; he is a good man and a good police officer.

Ms. Smotzer, James Street – Were tests giving before he was hired and why does he have to have them taken over again if they were given to him before he was hired. Solicitor Alexander responded he does not know if the tests were given to him before he was hired, he presumes that they were, but his contract calls for the Borough to be able to direct him to a physical on a yearly basis. But more importantly, even his own lawyer agrees that he can't come back until he is released to come back and it is the Chief's lawyer's position that it is his own doctor's that has to release him, not the Borough's doctor's, which Solicitor Alexander disagrees with because he believes the Borough's doctor's have to be the one to release him.

Mr. Bertoline, S. North Street – Was there a deadline set that the Chief had to comply with getting the tests done. Mr. Ziencik responded, he was given a reasonable amount of time. Mr. Ziencik commented that it is a form of insubordination.

Ms. Honse, James Street - What she does remember from the last meeting is that what was required for him to come back was a pre-test. She was not aware that the proof of the remaining hours left out of already accounted for, that was not necessarily a condition of him coming back, it was just the pre-tests. It was something that several members of Council wanted, and it was not voted on, but it did not come up as a condition of him coming back. At this point, there has been so much contention caused by a couple members of Council in this issue that she finds it kind of offensive that it is being brought up again and she would like to ask the other members of Council to consider that maybe this is something that should come up and be done after the new Council is in place and let the new Council deal with it. She is not a fan of paying someone for not working, it has stretched on way too long, she is in disagreement with it personally, but she will say that there is bad faith with some of the people on Council and would like to see it dealt with, negotiated or whatever needs to be done with new Council members that are coming in here without that Agenda. She

thinks that would help heal the community. That way, if they find cause, it will be people coming in that are looking at it outside of the view of the contention and the anger. She is not saying that Julio is right, but she is saying that nobody is right. She said we have had very poor leadership; we have someone who is responding to the continued contention and continued attacks on him. He is not right, either, but she would say, hating that he is being paid for something he is not doing, but let this go. Let this go now, let's start fresh. The audience clapped.

Mr. Voles, James Street – What are the legal ramifications on this issue. He agrees with the Mayor, yes he is on paid administrative leave, should he be getting it, no. But bringing up the termination of the Chief now, what are the legal ramifications that the Borough is going to suffer being that we now just found out that he is now suing us. Solicitor Alexander responded that he is not now suing us. He threatened numerous times that he will. Mr. Voles thinks Council should wait until new Council takes place.

Mr. Moreno, Colfax Street – The money spent on the forensic audit was a waste of money. Mr. Ziencik asked do you know what would have avoided that is a time sheet turned in. Mr. Moreno asked did that happen. Mr. Ziencik responded, no sir.

Mayor Lloyd responded the Chief is a salaried employee. Mr. Ziencik said it does not matter; you still have to account for your vacation, your sick-time and your time off.

Mr. Ziencik asked what good is a signed contract. Mr. Moreno yelled you guys have been arguing the contract for two years. Mr. Ziencik responded, not the contract, the job description that was in place it just wasn't liked and was to be redefined. The contract was signed before he even got here. It was a three-year contract which expires October of 2016. It was a job description that was in question. There is a contractual obligation.

There was a person who said there is a motion on the floor. Mr. Ziencik said we are not hurrying this along. Mr. Ziencik said he is explaining to the man of what the answer is. Mr. Ziencik said he will take all night if he wants to. Mr. Ziencik said the contractual obligation states, sick time, vacation time, rate of pay. We have received no documentation of any accountability of that. Zero. That is why this was put through. Accountability. Mr. Moreno asked that the contract says that. Mr. Ziencik said, yes, it states how many sick days you got how many vacation days you got. It was in his contract that he was allowed to buy an extra week vacation out of his salary. Mr. Moreno can't understand how Council can hire someone without an agreement on the job description. Mr. Ziencik said, there was on in place when the ad was put in the newspaper to hire the chief but it was

13

| | | |
|---|---|---|
| | to be redefined and was not well liked. Mr. Ziencik said the contract was in place from day one.<br>Mr. Molnar said there was a motion at the last meeting to authorize the Solicitor to subpoena all the documents from the Chief.<br>Mr. Ziencik asked if there were any questions from the Board. Mr. Ziencik questioned the Solicitor, with the motion that is being made, can it withhold water, is there enough evidence? Solicitor Alexander responded, he thinks he gave his opinion on that the last time we were here a month ago and his opinion then is the same as his opinion now and that is that it comes down to credibility determination by the tryer of fact. Whoever trys the appeal to this case to make a determination as to whether the Chief is credible in his accounting of the various time and whether he had proper authorization to take it. If the tryer determines that Council is creditable and the Chief lacked the authority to take this additional time, that is when you are going to be successful. Solicitor Alexander does not believe this is a slam-dunk, this is a case where there is going to be findings and fact of creditability determinations which is usually the case in most trails. Solicitor Alexander cannot tell Council that is going to be a slam-dunk case. He can tell you that it is going to come down to creditability.<br>Ms. Hones spoke and suggested that it wait to there is a Council that is completely creditable to make this decision.<br>Mr. Ziencik asked for a Roll-Call Vote:<br>Mr. Zurisko – Yes<br>Mr. Overly – Yes<br>Mr. Molnar – Yes<br>Mr. Ziencik – Yes<br>Mr. Forbes – Yes<br>Mr. Polsinelli – Yes<br>Motion carries. | |
| **Additional Personnel** | 2nd Step Grievance for Street/Water Departments<br>**MOTION 20.11.2015:** Mr. Forbes made a motion to deny the 2nd Step Grievance for Street / Water Department. The motion was seconded by Mr. Zurisko and carried unanimously. | M |
| **CITIZEN COMMENTS** | Mr. Moreno, Colfax Street – asked how to get a potential hazardous problem solved with leaves on the sidewalk when he call the borough, code enforcement officer and property owner. Mr. Forbes will address this issue with the code enforcement officer.<br><br>Mr. Voles, James Street – Utility Billing problem. He was told the Borough office will review this problem with the software company and get back to him to resolve this issue.<br><br>Mayor Lloyd referred Council and the Solicitor to the | |

| | |
|---|---|
| | Borough Code exactly who the Police Chief reports to and it is not the Council, it is the Mayor. One the accountability part, the Mayor knows where he was at and there was accountability from the Chief to the office when he took vacation. What he is saying the Pennsylvania Code book, the law, states that he works for the Mayor. The Mayor said he have the chief permission to go away because he was on paid administrative leave that Council put him on.<br>Mr. Spark, Pittsburgh Street – He said he received some information for municipal training and was wondering if the Borough will pay for it. Mr. Ziencik said you will be reimbursed once proof is shown that you attended the municipal training.<br>Ms. Smother, James Street – She is questioning if all the information about Springdale Borough that is in the newspaper today all correct and if it is not, what is correct. What is correct and what is incorrect. Mr. Ziencik asked the newspaper reporter who wrote the article if the information in today's newspaper is true & correct. He was told yes.<br>Ms. Ciskei, Indiana Township - explained what a condescending experience she received by the Chief regarding a police report she filed. She said it was very upsetting to her. |
| **Solicitor's Report (cont.)** | Solicitor Alexander announced that there is one other issue to bring up. We did place the Chief of unpaid leave when Council met the last time. The following day, the Chief's lawyer and Solicitor Alexander had a conversation about whether that should continue to be paid for a variety of reasons. Solicitor Alexander said he indicated that he would talk with Jason Fry and have the Board pooled to see if they would consider making that a paid leave on the interim. That occurred and Solicitor Alexander did report back to the Chief's lawyer that there was some consensus to deal with that issue; however, today is the day that needs to be done to convert the unpaid leave to paid leave up until today. There needs to be a motion to convert the unpaid leave to paid leave up until today.<br>Mayor Lloyd asked for a reason that it was changed from an unpaid leave back to a paid leave. Solicitor Alexander said Council is going to vote on it. Solicitor Alexander explained that his discussion with the lawyer is that he would bring up to Council to convert that back to a paid leave. That the Chief would be paid from the point of the unpaid leave until today. Council was pooled, there was some consensus to do it, but because the Chief required that any discussion & vote on his disciplinary status needs to be done at a public meeting. The Sunshine Law gives him that authority; therefore, it has to be done at a public meeting to ratify it and convert it back to a paid leave. That is the reason why it is brought up at this public meeting. |

1/6/2016

|  | MOTION 21.11.2015: Mr. Molnar made a motion to approve the conversion from unpaid leave to paid leave from last meeting until today. The motion was seconded by Mr. Overly. Mr. Ziencik asked for a Roll Call Vote:<br>Mr. Zurisko – Yes<br>Mr. Overly – Yes<br>Mr. Molnar – Yes<br>Mr. Ziencik – Yes<br>Mr. Forbes – Yes<br>Mr. Polsinelli – No<br>Motion Carries. |  |
|---|---|---|
|  | MOTION 22.11.2015: Mr. Molnar made a motion to appoint Derek Dayoub to Assistant Chief at the same rate of pay. The motion was seconded by Mr. Polsinelli. Since this is not on the Agenda, Mr. Ziencik asked for any comments from the floor. Ms. Smotzer asked what the Assistant Chief job description is. Mr. Ziencik responded that the job description for Assistant Chief is under the Bargaining Unit Contract right now that is already signed, sealed & delivered. Mr. Molnar responded that Derek Dayoub has been doing the job as Acting Chief at a pay increase of $2.00/hour. This motion appoints him as Assistant Chief, no longer Acting Chief, at the same rate of pay he is already making. Mr. Moreno asked if he will be under a contract. Mr. Ziencik responded that he is under the Collective Bargaining Agreement with all the other fellow officers now. Mr. Bertoline asked if there is seniority that need. Solicitor Alexander responded that promotions are not based on seniority. The motion carried unanimously. |  |
| **Executive Session** | At 8:26 p.m., Mr. Ziencik announced that Council will recess into an Executive Session.<br><br>At 8:37 p.m., Council returned from Executive Session and reconvened the Regular Meeting. Mr. Ziencik asked Solicitor Alexander if Council violated the Sunshine Law while in Executive Session. Solicitor Alexander responded that the Sunshine Law was not been violated while in Executive Session. |  |
| **ADJOURNMENT** | **MOTION: 23.11.2015:** Mr. Molnar made a motion to adjourn the meeting at 8:38 p.m. The motion was seconded by Mr. Polsinelli and carried unanimously. | **M** |

_____
Michael Ziencik
Vice-President of Council

_____
Kimberly A. McAfoose
Borough Manager

/mcw