**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIO F. MEDEIROS III, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No: 16-1370 |
| | ) | |
| v. | ) | US Magistrate Judge Cynthia R. Eddy |
| | ) | |
| SPRINGDALE BOROUGH, | ) | |
| PENNSYLVANIA, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

## I. ANSWER TO NATURE OF THE ACTION

1. Denied.

## II. ANSWER TO PARTIES

2. Admitted.

3. Admitted.

4. Admitted to the extent that the Borough Council is the governing body of Springdale Borough and has the exclusive authority to hire and fire the chief of police. Any other averments which may be expressed or implied by paragraph 4 of the Complaint constitute conclusions of law, to which no response is required.

5. The averments of paragraph 5 of the Complaint constitute conclusions of law, to which no response is required.

6. Denied.

## III. ANSWER TO JURISDICTION AND VENUE

7. The averments of paragraph 7 of the Complaint constitute conclusions of law, to which no response is required. To the extent that a response is deemed necessary, said averments are denied.

1

8.     The averments of paragraph 8 of the Complaint constitute conclusions of law, to which no response is required. To the extent that a response is deemed necessary, said averments are denied.

## IV.     ANSWER TO CLAIMS

9.     Admitted in part and denied in part.  It is denied that Plaintiff was hired by the Borough in October of 2013.  To the contrary, Council voted to hire Plaintiff in May of 2013; however, in light of Plaintiff's alleged personal and professional difficulties associated with moving to the Borough for months, he did not begin to work as Chief of Police until the end of October 2013.

10.     Admitted in part and denied in part. It is admitted only that Councilman Ziencik met Plaintiff in Chief Domratz's office in Harmar Township and offered to provide him with advance copies of the questions he might ask during his second interview. The remaining averments of paragraph 10 of the Complaint are denied.

11.     Admitted in part and denied in part. It is admitted that former Councilman Polsinelli at some point in time made a statement to Plaintiff that he had picked the wrong team and should have stuck with Molnar. The remaining averments of paragraph 11 of the Complaint are denied for lack of knowledge sufficient to form a belief as to their truth or falsity.

12.     Admitted in part and denied in part.  It is admitted only that Exhibit "A" to the Complaint is a copy of the employment contract before it was signed by both parties.   It is denied that Exhibit A is a copy of the final contract.

13.     Admitted only to the extent that Plaintiff reported to the Borough Mayor on a day-to-day basis. It is denied that Borough Council had no oversight over the office of Chief of Police, and it is denied that Plaintiff had no duty to report to Borough Council. To the contrary,

2

the Borough Code and the employment contract speak for themselves, and any averments or implications in Paragraph 13 contrary to the stated terms in those documents are denied.

14. Denied as stated. To the contrary, the contract speaks for itself and any averment stated in Paragraph 14 of the Complaint which is contrary to the express terms of the contract is denied. By way of further answer, the agreement states that any claim by the Plaintiff to receive "comp time" for more than 40 hours worked in a week must be submitted to the Mayor and then approved by Borough Council to determine whether the extra hours worked will be compensated by additional compensation or by "comp time".

15. Denied. It is denied that Derek Dayoub was permitted access to Plaintiff's office until after its contents were inventoried by law enforcement officers from Allegheny County and neighboring municipalities.

16. Admitted.

17. Denied. To the contrary, a mutually agreeable job description was subsequently prepared with Plaintiff's participation and collaboration and then approved by a vote of Council. Further, the advertisement for the position indicated that the Chief of Police would be a "working Chief of Police," and required that he have a valid Pennsylvania driver's license, and Plaintiff knew or should have understood from the outset that he was expected to patrol regularly as part of his duties as Chief of Police.

18. The averments constitute conclusions of law, to which no response is required. To the extent that a response may be deemed to be required, said averments are denied. It is specifically denied that the Borough willfully misclassified Plaintiff's status.

19. Denied for lack of information sufficient to form a belief as to the truth or falsity of these averments.

20. Denied.

21. Denied.

22. Denied upon information and belief.

23. Denied upon information and belief.

24. Admitted only to the extent that former Councilman Polsinelli at some point stated to Plaintiff that he had made a mistake coming to Springdale and that he would buy Plaintiff a steak dinner if he lasted a year as Chief. The remaining averments of paragraph 24 of the Complaint are denied.

25. Admitted only to the extent that former Councilman Polsinelli at some point stated to Plaintiff that not everything is black and white in handling police work in the Allegheny Valley. The remaining averments of paragraph 25 of the Complaint are denied.

26. Admitted only to the extent it is alleged that, after Plaintiff was appointed Chief of Police, he unilaterally terminated the access to the GPS system previously enjoyed by Council members, including Mr. Polsinelli, and that Polsinelli caused a subaccount to be created so that his access to the system would be restored.

27. Denied.

28. Admitted in part and denied in part. It is admitted only that charges were brought against Plaintiff for conduct unbecoming an officer, but following discussions, Council determined not to pursue the charges further. It is denied that the charges were false.

29. Admitted in part and denied in part. It is admitted only that a Loudermill hearing was conducted. The remaining averments of paragraph 29 of the Complaint are denied.

30. Admitted in part and denied in part. It is admitted only that Councilman Ziencik made the remarks alleged. It is denied that such remarks were made on numerous occasions or that were part of course of regular harassment of Plaintiff.

31. Denied. To the contrary, Plaintiff disliked Officer Dayoub and made attempts to secure his dismissal by the Council on charges that lacked credibility.

32. Admitted in part and denied in part. It is admitted that Plaintiff persuaded the Mayor to seek a Council vote to terminate Officer Dayoub's employment on the basis that his probationary period had not expired. The remaining averments are denied as stated. To the contrary, Council did not approve Plaintiff's recommendation to terminate Officer Dayoub without cause, because his probationary period had already expired, as pointed out by Councilman Polsinelli.

33. Admitted.

34. Admitted only to the extent that Plaintiff and the Mayor later brought disciplinary charges against Officer Dayoub, conducted a Loudermill hearing and attempted to impose a suspension upon Dayoub, which was not approved by the Council.

35. Denied. No verbal warning was issued.

36. Admitted in part and denied in part. Upon information and belief, it is admitted that Plaintiff generated several complaints about Officer Dayoub. The remaining averments are denied. By way of further answer, Plaintiff frequently spoke about "open internal affairs files" or complaints against Dayoub, but he never substantiated or took action on any of them, excepting the Loudermill hearing previously referenced.

37. Admitted to the extent that Exhibit 2 to the Complaint is a copy of a letter drafted by Plaintiff in or about April 2015 and purportedly addressed to the Borough's Solicitor. The

5

contents of the letter speak for themselves. To the extent these averments seek to interpret the letter, said interpretation is denied.

38. Admitted in part and denied in part. It is admitted that Plaintiff gave copies to Council President Fry and Mayor Lloyd and that Mayor Lloyd gave a copy to Solicitor Alexander. It is denied that the Solicitor shared the letter with the rest of the Springdale Council members but did provide it to the Borough Manager and made reference to to it in his routine monthly report to Council. The remaining averments are denied. Solicitor Alexander's advice was that it needed to be turned over to the insurance carrier.

39. Admitted to the extent that some of the contents of Plaintiff's letter were reported in the *Valley News Dispatch* newspaper. The remainder of the averments are denied.

40. Admitted to the extent that the *Valley News Dispatch* published an article dated April 29, 2015 attributing to former Councilman Molnar the statement, "I will be seeking legal counsel. His implied threats will not be tolerated." The remainder of the averments are denied.

41. Admitted.

42. Denied. It is specifically denied that there was an abusive work environment. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of any medical or psychological problems Plaintiff may have experienced or what caused any that might be proven to have existed, and these allegations are therefore denied.

43. Admitted in part and denied in part. It is admitted that Plaintiff filed a workers' compensation claim. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations, which are therefore denied.

44. Denied.

45.     Admitted in part and denied in part. It is admitted that Plaintiff came to the office after his doctor had instructed him not to go to work. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations, which are therefore denied.

46.     Admitted.

47.     Admitted in part and denied in part. It is admitted only that Councilman Zurisko advised Plaintiff that the Council was very concerned about Plaintiff's lack of accountability for the time he had worked and the time for which he had been paid.  It is denied that the inquiry pertained to Plaintiff's then-current medical situation. It is denied that there was a "screaming match" at an executive session of the Council or that Zurisko said anything to Plaintiff about a "screaming match" or about his medical leave.  The remaining averments of paragraph 47 of the Complaint are denied.

48.     Admitted in part and denied in part. It is admitted that Plaintiff stated at some point during the conversation with Councilman Zurisko that he was advised by his doctor to stay home from work but that he had come to the office to prepare a duty schedule despite his doctor's instructions. It is denied that the conversation between Plaintiff and Councilman Zurisko was about Plaintiff's medical leave.   The remaining averments of paragraph 48 of the Complaint are denied.

49.     Denied as stated. To the contrary, Councilman Zurisko suggested that Ms. McAfoose be brought into the conversation about Plaintiff's accountability for the time for which he had been paid.   The remaining averments of paragraph 49 of the Complaint are denied.

50.     Denied as stated. To the contrary, Ms. McAfoose stated that the balance of available leave time indicated on Plaintiff's paystub reflected the time off that he had reported to

McAfoose, but any time off that Plaintiff had not reported would not be reflected in the records or on his paystub. The remaining averments of paragraph 50 of the Complaint are denied.

51.     Admitted in part and denied in part. It is admitted only that Councilman Zurisko stated that the information received from Ms. McAfoose was different from what he thought he had been told earlier, and that McAfoose responded that she was not the Chief's keeper and only recorded the days off that are reported to her by the Plaintiff. It is denied that Zurisko became upset or emotional at any time during the conversation. The remaining averments of paragraph 51 of the Complaint are denied.

52.     Admitted in part and denied in part. It is admitted only that Plaintiff said something about whether he was being interrogated. The remaining averments of paragraph 52 of the Complaint are denied.

53.     Admitted in part and denied in part. It is admitted only that Councilman Zurisko stated that Plaintiff should not be coming to work if he was on medical leave and was a potential liability to the Borough for that reason, and that Plaintiff must get a letter from a doctor before returning to work. It is denied that Councilman Zurisko became enraged. To the contrary, Plaintiff became emotionally disturbed during the conversation.

54.     Denied for lack of sufficient knowledge to form a belief as to the truth or falsity of these allegations.

55.     Admitted in part and denied in part. Upon information and belief, it is admitted that Councilman Molnar took pictures of Plaintiff playing golf one day. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations, which are therefore denied.

56.     Admitted.

57.     Admitted.

58.     Admitted only to the extent that Exhibit 4 to the Complaint is a letter that Plaintiff sent back to Councilman Forbes, the contents of which speaks for itself. It is further admitted that the Borough did not allow Plaintiff access to records stored in the police station subsequent to the date of his administrative leave.

59.     Admitted only to the extent that Exhibit 5 to the Complaint is a letter that Councilman Forbes sent to Plaintiff, the contents of which speak for themselves. The remaining averments, which purport to interpret the letter, are denied.

60.     Denied. It is denied that Plaintiff provided the Borough with work release documentation from his physician. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations, which are therefore denied.

61.     Admitted.

62.     Admitted.

63.     Admitted in part and denied in part. It is admitted that Councilmen Molnar and Polsinelli expressed a desire to terminate Plaintiff's employment at an executive session. The remaining averments are denied.

64.     Admitted in part and denied in part. Admitted only to the extent that Council decided to retain a forensic investigator to investigate how much time off Plaintiff had taken and whether or not he had misstated the hours that he had claimed to have worked. The remaining averments are denied.

65.     Admitted in part and denied in part. It is denied that the reason for the issuance of the suspension with pay was "supposed". The remaining averments are admitted.

66. Admitted only to the extent that Exhibit 7 to the Complaint is a copy of a letter sent to Plaintiff by Councilman Forbes on behalf of the Borough, the contents of which letter speak for themselves. The remaining averments are denied.

67. Denied.

68. Admitted in part and denied in part. The averments of this paragraph of the Complaint are admitted to the extent it is alleged that Plaintiff was told that he was permitted to come to the Chief's office to return his badge and phone and to retrieve his personal items, and that sheriff's deputies and chiefs from two other municipalities, Officer Dayoub and television news crews were present in the vicinity of the police station when he did so. It is admitted that Plaintiff was not permitted access to the documents or police materials in the office. It is specifically denied that Defendant arranged for the presence of the news media. The remaining averments are denied. By way of further answer, Plaintiff had been informed in advance that the other law enforcement officers would be present to ensure the integrity of the contents of the office.

69. Admitted in part and denied in part. It is admitted only that Plaintiff left abruptly when his demand to access the computer was declined, and that a media source reported he had been escorted from his office. The remaining allegations are denied. To the contrary, Plaintiff left the police station abruptly, expressing anger that he was not allowed access to business documents and the computer, despite having been advised in advance of the procedure that would be employed. The remaining averments are denied.

70. Admitted in part and denied in part. It is denied that Mayor Lloyd repeatedly informed the Borough Council that he had directed Plaintiff to take time off. To the contrary, Mayor Lloyd had no authority under the Borough Code or the contract to direct the Chief of

10

Police to take time off of his job without consulting the Borough Council. The remaining averments are admitted.

71. Admitted to the extent that Exhibit 10 to the Complaint is a copy of a letter from Plaintiff's attorney to the Borough's Solicitor, which document speaks for itself, and that no response was made to the letter. Any interpretation of the same is denied.

72. Admitted in part and denied in part. It is admitted only that the Borough hired Deluzio and Co. to audit the Plaintiff's work hours and compensation issues and that no bid process was required for this work. The remainder of the averments are denied.

73. Denied.

74. Denied. To the contrary, the Borough provided Mr. Anzovino with everything that he requested relevant to the matter under inquiry.

75. Admitted in part and denied in part. It is admitted that Mr. Anzovino interviewed Acting Chief Dayoub and Borough Manager McAfoose and analyzed the documents provided to him by Borough personnel. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations, which are therefore denied.

76. Defendant lacks sufficient knowledge or information to form a belief as to the totality of information reviewed by Mr. Anzovino or as to the truth or falsity of these allegations, which are therefore denied.

77. Defendant lacks sufficient knowledge or information to form a belief as to the testimony of Mr. Anzovino at the unemployment compensation hearing or as to the truth or falsity of these allegations, which are therefore denied.

78. Admitted.

11

79. Admitted. By way of further answer, upon information and belief, Mayor Lloyd had refused a request to be interviewed by Mr. Anzovino.

80. Defendant lacks sufficient knowledge or information to form a belief as to the testimony of Mr. Anzovino at the unemployment compensation hearing or as to the truth or falsity of these allegations, which are therefore denied.

81. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of these allegations, which are therefore denied.

82. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of these allegations, which are therefore denied.

83. Admitted upon information and belief.

84. The averments of paragraph 84 of the Complaint constitute legal conclusions to which no response is required. To the extent that a response is deemed necessary, the same are denied.

85. Admitted in part and denied in part. The averments are admitted to the extent that Plaintiff received a letter directing him to attend a Loudermill hearing on October 29, 2015, concerning allegations that he had misappropriated leave, along with a copy of a preliminary report from Deluzio and Company, LLC, and to the extent that Exhibit 12 to the Complaint is a copy of a letter written by Plaintiff's attorney to the Borough's Solicitor, which document speaks for itself. The remaining averments, seeking to interpret portions of these documents, are denied.

86. Admitted in part and denied in part. It is admitted that the Loudermill hearing was attended by Plaintiff, Mayor Lloyd and Council members Polsinelli, Forbes and Fry. It is denied that Council member Molnar attended the Loudermill hearing. The remaining averments are denied.

87. Admitted.

88. Admitted.

89. Admitted.

90. Admitted.

91. Admitted in part and denied in part. It is admitted that Springdale voted to authorize the Solicitor to issue a subpoena to the Chief for him to produce additional records, which the Chief had claimed he possessed, supporting his explanation of his leave usage. It is also admitted that Medeiros, through his attorney, asked for access to his office and computer. The remaining averments of Paragraph 91 of the Complaint are denied.

92. Admitted in part and denied in part. It is denied that Medeiros ever underwent an unpaid suspension or that he was suspended for any period of time during which he was not paid. The remaining averments of Paragraph 92 are admitted. By way of further answer, there were numerous conversations between the Solicitor and Plaintiff's counsel regarding the things that Medeiros would need to do in order to return to work. Also, Plaintiff was notified of the actions required of him by virtue of the fact that his attorney was present at the Council meeting where the requirements were openly discussed. The remaining averments are denied.

93. Admitted in part and denied in part. It is admitted that the subpoena for records was issued pursuant to 8 Pa.C.S.A. §1014. The remaining averments of Paragraph 93 of the Complaint constitute legal conclusions to which no response is required, and the same are therefore denied.

94. The averments of Paragraph 94 constitute legal argument to which no response is required. To the extent which any response may be deemed required, it is denied that Defendant

13

had knowledge that Medeiros would be out of town or out of the state during the time period in which compliance with the subpoena was requested.

95. Admitted only to the extent that Plaintiff's counsel issued a letter setting forth certain arguments, a copy of which is attached to the Complaint as Exhibit 14, which speaks for itself. Any interpretation is denied.

96. Denied as stated. To the contrary, Plaintiff was given instructions, through his counsel, that he would be required to obtain medical and psychological and drug testing, but he was not notified of particulars until November 6, as appointments could not be obtained prior to that date. Plaintiff took a drug test but failed to be examined by any Borough medical providers at the time in question.

97. Admitted in part and denied in part. It is admitted that Plaintiff passed a drug screen. The remaining averments are denied for lack of knowledge or information sufficient to support a belief as to their truth or falsity. By way of further answer, Plaintiff was to be examined by the physician selected by the Borough, but he did not comply.

98. Upon information and belief, it is admitted that Medeiros' physician refused to release him to return to work until he was seen by his treating psychiatrist. The remaining averments of Paragraph 98 are denied for lack of knowledge or information sufficient to form a belief as to their truth or falsity.

99. The averments of Paragraph 99 are admitted only to the extent that the Borough, through its Solicitor, sent a letter to Plaintiff's counsel dated November 6, 2015, the contents of which speak for themselves. It is denied that Medeiros offered to purchase a plane ticket and fly back for exams until after Medeiros demanded that the exams be cancelled, which they were.

14

100. The averments of Paragraph 100 are denied. It is specifically denied that Plaintiff was on medical leave or that his administrative leave was unpaid. It is denied that the Mayor had authority to grant Plaintiff's request for permission to travel out of town, and Plaintiff had been informed of this. The remainder of the averments are admitted.

101. Admitted.

102. Admitted to the extent that a small digital recorder is used to assist the Borough Secretary to formulate minutes of the meetings, and the digital recordings are not retained after the minutes are approved.

103. Admitted.

104. Admitted.

105. Admitted in part and denied in part. It is admitted that Molnar was in the minority in the motion to terminate Plaintiff on October 29, 2015. It is admitted that, on November 17, 2015, Molnar argued his belief that the Chief had done something wrong relative to his compensatory and other leave as a reason to terminate his employment. It is admitted that Molnar knew that Lloyd had stated that he had authorized the leave; however, it is denied that Lloyd had the power or authority to approve such leave or that Plaintiff was entitled to rely solely upon Lloyd's permission to take extensive leave time. The remainder of the averments of paragraph 105 of the Complaint are denied.

106. Denied as stated. To the contrary, the statements of Mr. Molnar are reflected in the minutes of the meeting of November 17, 2015, which speak for themselves. Upon information and belief, it is specifically denied that Mr. Molnar knowingly made "false" allegations.

107. Denied as stated. To the contrary, the statements of Solicitor Alexander are reflected in the minutes of the meeting of November 17, 2015, which speak for themselves.

108. Denied as stated. To the contrary, the statements of Mr. Molnar are reflected in the minutes of the meeting of November 17, 2015, which speak for themselves. Upon information and belief, it is specifically denied that Mr. Molnar knowingly made "false" allegations.

109. Admitted to the extent that a Loudermill hearing was not conducted on the issues of failure to appear for medical exams or failure to comply with the Borough's subpoena. The remaining averments of Paragraph 109 constitute legal conclusions to which no response is required. To the extent that a response is deemed necessary, said averments are denied.

110. Denied as stated. To the contrary, the statements of Mr. Molnar are reflected in the minutes of the meeting of November 17, 2015, which speak for themselves. By way of further answer, upon information and belief, any reference to the workers' compensation claim was not intended as part of the motion or a proposed basis for termination and was not taken as such by the members of Council present.

111. The averments contained in Paragraph 111 constitute legal conclusions to which no response is required. To the extent that a response is deemed necessary, said averments are denied.

112. Denied as stated. To the contrary, the statements of Mr. Molnar are reflected in the minutes of the meeting of November 17, 2015, which speak for themselves. By way of further answer, upon information and belief, any reference to the EEOC charge was not intended as part of the motion or a proposed basis for termination and was not taken as such by the members of Council present.

16

113.     The averments contained in Paragraph 113 constitute legal conclusions to which no response is required.

114.     Denied as stated.  The statements of Mr. Molnar and the Solicitor are contained in the minutes of the meeting, which speak for themselves.  It is specifically denied that Mr. Molnar made a motion to terminate the Chief for the reasons alleged. To the contrary, the motion in fact was made after the Solicitor advised that Plaintiff's filings of EEOC charges or lawsuits could not be taken into account.

115.     Denied as stated.  To the contrary, the statements of Mr. Molnar are reflected in the minutes of the meeting of November 17, 2015, which speak for themselves.

116.     Admitted.

117.     Denied as stated.  The contents of the letter from Plaintiff's lawyer at Exhibit 18 of the Complaint speak for themselves.  Any interpretation is denied.

118.     The averments of Paragraph 118 are denied as stated.  To the contrary, the letter from the Borough Solicitor marked as Exhibit 19 to the Complaint speaks for itself. Any interpretation is denied.

119.     It is admitted that Plaintiff filed a second charge with the EEOC.

120.     Denied as stated.  To the contrary, Plaintiff claimed that Springdale failed to disburse vacation pay.  However, it is denied that Medeiros had any unused, earned vacation pay or was entitled to any payment at that time.

121.     The averments of Paragraph 121 are denied as stated. To the contrary, Plaintiff's letter of December 31, 2015, speaks for itself and Springdale owed no duty to Medeiros. Furthermore, it is denied that the Borough "ignored" Plaintiff's request.

122. The averments contained within this Paragraph are conclusions of law to which no response is required; however, to the extent that a response is deemed necessary, said averments are denied.

123. The contents of the letter by Plaintiff's counsel dated January 12, 2016, attached as Exhibit 23 to the Complaint speak for themselves. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the contents of said letter, and the same are therefore denied. The remaining averments are denied.

124. Admitted in part and denied in part. It is admitted that Springdale has not recalled Chief Medeiros to work. It is denied that Plaintiff satisfied the conditions precedent to reinstatement. The remaining averments are denied.

125. Admitted.

126. Admitted.

127. Admitted.

128. Admitted in part and denied in part. It is admitted that the unemployment compensation referee concluded that Medeiros did not engage in willful misconduct as defined under the unemployment compensation law. It is denied that the referee determined he was terminated without cause. The remaining averments are denied.

129. Admitted.

130. The averments of Paragraph 130 are admitted to the extent that the letter from Plaintiff's counsel attached to the Complaint as Exhibit 24 was transmitted to the Borough Solicitor and speaks for itself. The remainder of the averments are conclusions of law to which no response is require; however, to the extent that a response is deemed necessary, said averments are denied.

131. Admitted. By way of further answer, it is denied that the Borough owes the Plaintiff any sum of money. The remainder of the averments are conclusions of law to which no response is require; however, to the extent that a response is deemed necessary, said averments are denied.

132. Denied.

133. Denied.

134. Admitted.

135. Admitted.

## V.     ANSWER TO COUNTS

### Count 1: Breach of Contract – Pennsylvania Common Law

136. Defendant incorporates Paragraphs 1-135 of its Answer as if fully set forth herein.

137. The averments contained in Paragraph 137 constitute legal conclusions to which no response is required.

### Count 2: Pennsylvania Wage Payment and Collection Law

138. Defendant incorporates Paragraphs 1-137 of its Answer as if fully set forth herein.

139. This cause of case was dismissed by Order of Court dated November 4, 2016.

### Count 3: Fair Labor Standards Act - Misclassification and Failure to Pay Overtime

140. Defendant incorporates Paragraphs 1-139 of its Answer as if fully set forth herein.

141. Admitted in part and denied in part. It is admitted only that Plaintiff's salary was $76, 700. The remaining averments contained in Paragraph 141 are denied.

142. The averments contained in Paragraph 142 are denied.

## Count 4: Title VII Retaliation

143. Defendant incorporates Paragraphs 1-142 of its Answer as if fully set forth herein.

144. Denied.

## Count 5: Pennsylvania Human Relations Act Retaliation

145. Defendant incorporates Paragraphs 1-144 of its Answer as if fully set forth herein.

146. Denied.

## Count 6: Americans with Disabilities Act and PHRA Disability Discrimination

147. Defendant incorporates Paragraphs 1-146 of its Answer as if fully set forth herein.

148. Denied.

149. Denied.

## Count 7: Rehabilitation Act Discrimination

150. Defendant incorporates Paragraphs 1-149 of its Answer as if fully set forth herein.

151. Denied.

152. Denied.

## Count 8: Americans with Disabilities Act Retaliation

153. Defendant incorporates Paragraphs 1-152 of its Answer as if fully set forth herein.

154. Denied.

## Count 9: Rehabilitation Act Retaliation

155. Defendant incorporates Paragraphs 1-154 of its Answer as if fully set forth herein.

156. Denied.

## Count 10: U.S. Constitution, Amendment I & 42 U.S.C. §1983

157. Defendant incorporates Paragraphs 1-156 of its Answer as if fully set forth herein.

158. Denied.

## Count 11: U.S. Constitution, Amendment XIV & 42 U.S.C. §1983

159. Defendant incorporates Paragraphs 1-158 of its Answer as if fully set forth herein.

160. Denied.

## Count 12: Pennsylvania Whistleblower Law

161. Defendant incorporates Paragraphs 1-160 of its Answer as if fully set forth herein.

162. This cause of case was dismissed by Order of Court dated November 4, 2016.

## AFFIRMATIVE DEFENSES

### First Defense

1. Pursuant to Pennsylvania statutory law and the employment contract between Plaintiff and Defendant, the power to hire and fire the Borough's Chief of Police, to define his job duties, and to evaluate his performance rested with the Borough Council.

2. Plaintiff willfully failed and refused to perform his job duties in the manner lawfully and reasonably specified by the Borough Council.

3. Plaintiff's conduct of his position caused the police department which he supervised to exceed its budget by a sum of money which was very significant for municipality the size of the Defendant Borough.

4. Plaintiff willfully failed and refused to provide information to the Borough Council pertaining to matters and issues within the purview of its authority and responsibility to the citizens of the Borough.

21

5. The Borough Council became dissatisfied with Plaintiff's performance as Chief of Police for reasons having nothing to do with his filing of claims or his alleged protected status.

6. The Borough Council gave Plaintiff multiple opportunities to improve his job performance and to conform to Council's reasonable expectations with respect to communicating information needed by Council to perform its lawful function, accountability for expenditures, staffing, nature and quality of work.

7. Defendant has not acted contrary to any applicable law in terminating Plaintiff's employment and is entitled to make legitimate and lawful employment decisions within its discretion. Defendant has had legitimate, non-discriminatory reasons for terminating Plaintiff.

8. Defendant at no time based any of its decisions on the Plaintiff's alleged protected activity. To the contrary, Defendants acted with lawful legitimate reasons and motivations. Plaintiff's employment with the Defendant ended for valid, lawful, legitimate reasons and not as a result of his alleged protected status or activity.

### Second Defense

At all times relevant to the matters complained of in Plaintiff's Complaint, Defendant's actions were justified and/or privileged.

### Third Defense

Plaintiff's alleged injuries, sufferings and/or damages, if any, were caused by his own conduct and not by any violation of the law on the part of the Defendant.

### Fourth Defense

All of Plaintiffs' claims may be barred by the applicable statute of limitations and/or the doctrine of laches.

### Fifth Defense

To the extent revealed through discovery or investigation, Defendant pleads the defense that Plaintiff may have failed to mitigate his alleged damages.

### Sixth Defense

Defendant invokes all applicable immunity defenses under state and federal law.

### Seventh Defense

Plaintiff's Complaint fails to state a claim under the Fair Labor Standards Act, because Defendant does not have 50 or more employees.

### Eighth Affirmative Defense

Punitive damages are not recoverable against the Defendant.

**MARSHALL DENNEHEY**
**WARNER COLEMAN & GOGGIN**


BY:  */s/Danielle M. Vugrinovich*
     SCOTT G. DUNLOP, ESQUIRE
     PA ID #41638
     DANIELLE M. VUGRINOVICH, ESQUIRE
     PA ID #88326
     **Attorneys for Defendant, Springdale Borough, Pennsylvania**
     US Steel Tower, Suite 2900
     600 Grant Street
     Pittsburgh, PA  15219
     (412) 803-1140
     (412) 803-1188/fax